UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DERRICK R. WOODS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:15-CV-19-TLS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Derrick R. Woods, a *pro se* petitioner, filed a Petition for Writ of Habeas Corpus [ECF No. 1] pursuant to 28 U.S.C. § 2254 challenging his 2014 conviction for possession of heroin with intent to deal in Lake County. *State v. Woods*, 45G04-1209-FA-21. For the reasons stated below, the Court **DENIES** the Petition [ECF No. 8] and **DENIES** the Petitioner a certificate of appealability. The Clerk is **DIRECTED** to close this case.

## BACKGROUND

In deciding the Petition, the Court must presume that the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Woods's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals summarized the facts underlying Woods's offense as follows:

> On September 13, 2012, Munster Police Officer Timothy Nosich was on patrol when he observed Woods exit a taxi cab and begin to run. Officer Nosich recognized Woods from a prior police contact and had been investigating Woods after multiple confidential informants reported that Woods had been selling heroin in Munster. Furthermore, approximately a week before the encounter in question, Officer Nosich had received a bulletin from the Cook County Intelligence Unit in Illinois, bearing Woods's photograph and indicating that Woods was a suspected heroin dealer in Illinois.

> Officer Nosich watched Woods as he slowed to a walk, and the officer observed that Woods was talking on a cell phone and had something balled up in his right hand. Based upon Officer Nosich's knowledge of Woods and the fact that Woods was talking on a cell phone, the officer suspected that the item Woods held in his hand was narcotics.
>
> Officer Nosich exited his vehicle, an unmarked vehicle bearing lights, sirens, and a spotlight. The officer was wearing his full police uniform. Officer Nosich approached Woods and asked if he could speak with him. Woods said, "For what?" and continued walking. Tr. 38. Officer Nosich again asked if he could speak with Woods and Woods again replied, "For what?" *Id.* Woods then began to run away, fleeing from Officer Nosich, who pursued Woods on foot. Officer Nosich ordered Woods to stop, yelling "police," "Derrick," and "Champagne," which was Woods's nickname, but Woods continued to run. *Id.* at 39.
>
> Eventually, Officer Nosich caught up to Woods, deployed his taser, and took Woods into custody. When the taser deployed, a bag fell out of Woods's hand. It was later determined that the bag held fifty individual packages of heroin, with each individual package weighing .06 grams, for a total weight of 2.03 grams of heroin. Officer Nosich also recovered two cell phones from Woods.
>
> On September 15, 2012, the State charged Woods with class B felony dealing in a narcotic drug. On March 1, 2013, Woods filed a motion to suppress the evidence seized by Officer Nosich, arguing that it was the result of an illegal investigatory stop. The trial court denied the motion. Woods filed a motion to reconsider the motion to suppress on January 23, 2014, which the trial court denied. On February 4, 2014, a jury found Woods guilty as charged. Following a February 25, 2014, sentencing hearing, the trial court imposed a ten-year sentence, with nine years executed and one year suspended to probation.

*Woods v. State*, No. 45A04-1404-CR-124, slip op. at 2–3 (Ind. Ct. App. Oct. 21, 2014).

On direct appeal, Woods argued that: (1) the search and seizure violated the Fourth Amendment and Article I, Section 11 of the Indiana Constitution; (2) that the evidence was insufficient to support his conviction; and (3) the trial court abused its discretion in sentencing him. (Appellant Br. 6–13, ECF No. 17-3.) The Indiana Court of Appeals determined that the search was valid and affirmed Woods's convictions. (Op. 11, ECF No. 17-5.) Woods filed a Petition to Transfer [ECF No. 17-6] in the Indiana Supreme Court, again raising his Fourth Amendment claim and the sufficiency of the evidence claim. The Indiana Supreme Court denied

that Petition. [ECF No. 17-2.] He did not seek review in the U.S. Supreme Court. (Second Amend. Pet. 2, ECF No. 8-2.)

On January 9, 2015, Woods filed his first Petition for Writ of Habeas Corpus [ECF No. 1], which was amended most recently on February 5, 2015, and raises two claims: (1) a Fourth Amendment challenge to the search and seizure; and (2) whether the evidence was sufficient to show that he had the intent to deal heroin. (Second Amend. Pet. 5–13.)

**ANALYSIS**

Woods's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Woods's first claim alleges the search and seizure of his person violated the Fourth Amendment. (Second Amend. Pet. 5–10.) The Respondent argues that this claim is not cognizable in this proceeding. (Resp. 6, ECF No. 17.) As the Respondent correctly points out, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). This is because the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it "deflects the truthfinding process and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486–87. In habeas proceedings the "contribution of the exclusionary

rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

Therefore, federal habeas courts are barred from reviewing Fourth Amendment claims that were fully and fairly litigated in state court. *Id.* at 494–95; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) ("As long as a habeas petitioner enjoyed an opportunity for full and fair litigation of a Fourth Amendment claim in state court, federal habeas review of the claim is barred."). A habeas petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) he apprised the state court of his Fourth Amendment claim along with the factual basis for that claim; and (2) the state court thoroughly analyzed the facts and looked to the appropriate body of decisional law to resolve the claim. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

A review of the state proceedings demonstrates that Woods had a full and fair opportunity to litigate his Fourth Amendment claim. Woods raised his Fourth Amendment claim in the trial court both before and during trial, and on appellate review. *See Woods*, slip op. at 3–6. He was represented by counsel throughout those proceedings, had an opportunity for an evidentiary hearing in the trial court, and filed appellate briefs fully outlining his Fourth Amendment claim. The Indiana Court of Appeals issued an opinion thoroughly analyzing the facts pertaining to the search and looking to applicable Fourth Amendment law to resolve Woods's claim. *See id.* at 2–6. In sum, it is clear that Woods had a full and fair opportunity to litigate his Fourth Amendment claim.

In his Traverse [ECF No. 22], Woods argues that he was denied an opportunity to fully litigate his Fourth Amendment claim in state court. He complains that the trial judge who conducted the original suppression hearing did not make a record of findings of fact and

5

conclusions of law. (Traverse 13, ECF No. 22.) He also complains that when that court ruled on his Motion to Reconsider his Motion to Suppress, it did so without conducting another full hearing. (*Id.*) And, he further complains that the Indiana Court of Appeals did not review his Fourth Amendment claim *de novo*. (*Id.* at 13–14.) Despite these complaints, it is not for this court to examine the quality of the state court's hearing. *See Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003). All that is required is that the state provide a mechanism under which to litigate a claim and that the mechanism not be a sham. *Id.* Here, Indiana provided a mechanism for Woods to litigate his Fourth Amendment claim and there is no indication to suggest that any of the courts to consider this issue were unwilling to engage in a good faith review of Woods's Fourth Amendment claim.

Woods spends much of his Traverse arguing the merits of his Fourth Amendment claim. Although Woods clearly disagrees with the result reached by the Indiana courts, the opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Id.* at 532. Unless there has been a "subversion of the hearing process," a federal habeas court "will not examine whether the judge got the decision right." *Id.* at 531. Again, Woods has not demonstrated that there was a subversion of the hearing process in state court. He "simply asks [this Court] to disagree with the state courts' decision, a path that *Stone* closes." *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Accordingly, this claim cannot provide habeas relief.

Next, Woods claims that the Indiana Court of Appeals unreasonably determined that the evidence was sufficient to establish that he had the intent to deliver the heroin in his possession. (Second Amend. Pet. 11–13.) The Indiana Court of Appeals explained in its review of this decision:

> To establish that Woods committed class B felony dealing in a narcotic drug, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed heroin with the intent to deliver it. Ind. Code § 35-48-4-1(a)(2)(C). A conviction for possession with intent to deliver may be supported by either direct or circumstantial evidence. *Montego v. State*, 517 N.E.2d 74, 76 (Ind. 1997).
>
> ***
>
> In sum, the record reveals the following facts: (1) Woods possessed significantly more heroin than an average heroin user would typically possess; (2) the heroin in Woods's possession was packaged for distribution; (3) Woods had a second cell phone, which is typical of drug dealers; and (4) Woods does not have any of the distinguishing characteristics of an average heroin user. A reasonable jury could infer from this evidence that Woods possessed the heroin with intent to deliver it. Woods's arguments to the contrary amount to a request that we reweigh the evidence, which we will not do. We find that the evidence is sufficient to support the conviction.

*Woods*, slip op. at 7, 9.

Woods argues that the facts of his case are insufficient to support the finding that he intended to distribute heroin. He argues that each piece of evidence the Court of Appeals relied on could be interpreted differently. (Second Amend. Pet. 11–13.) However, Woods is not arguing that the State court committed an error which caused the jury to find him guilty and but for that error no reasonable juror could have found him guilty. Rather it is merely a request that this Court reweigh the evidence and reach a different conclusion. *United States v. Whaley*, 830 F.2d 1469, 1472 (7th Cir. 1987). This is not a basis for habeas corpus relief.

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, the Court must consider whether to grant Woods a certificate of appealability. 28 U.S.C. § 2253(c). To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

7

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons fully explained above, Woods's first claim is barred by *Stone*, and he has not established that the State courts unreasonably adjudicated his second claim. The Court finds no basis to conclude that jurists of reason could debate the outcome of the Petition or find a reason to encourage Woods to proceed further. Accordingly, the Court declines to issue Woods a certificate of appealability.

**CONCLUSION**

For the reasons set forth above, the Court **DENIES** the Petition [ECF No. 8] and **DENIES** the Petitioner a certificate of appealability. The Clerk is **DIRECTED** to close this case.

SO ORDERED on December 7, 2016.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION